**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Wood CASTLEBERRY,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles Monroe GILPEN,**
**Defendant-Appellant.**

**Nos. 80–1138, 80–1139.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1981.

Decided March 23, 1981.

Tom O'Toole, Phoenix, Ariz., for Castleberry.

Arthur L. Rothenberg, Miami, Fla., for Gilpen.

Robert Abel, Sp. Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

---

Before WALLACE and POOLE, Circuit Judges, and SMITH,* District Judge.

RUSSELL E. SMITH, District Judge:

Defendants Castleberry and Gilpen, following a joint trial, were convicted of conspiracy to import (21 U.S.C. § 963), conspiracy to possess with intent to distribute (21 U.S.C. § 846), and possession of (21 U.S.C. § 841(a)(1)) a controlled substance. All counts related to the same transaction. It is conceded that there was a conspiracy and that substantial quantities of marijuana were smuggled into the United States from Mexico.

█ Defendants claim that the evidence was insufficient to connect them with the conspiracy. It is probable that without the testimony of a coconspirator, Berry, the evidence is insufficient. Berry, however, identified Defendant Castleberry as one of the entrepreneurs and Defendant Gilpen as the owner of the plane used in the smuggling. There were many reasons why the jury might have rejected Berry's testimony: At the time of this offense he was a convicted felon on parole; he had committed perjury in the trial leading to his prior conviction; he was impeached by prior contradictory statements; he had identified an innocent man as the pilot of the plane; he had been promised immunity for the crimes here involved; he was under the witness protection program,[1] and the value of his support and pay was something over $11,000.00; he had been given a new identity; he had federal help in finding a job. Had there been no corroboration, it might be said that the qualifications of the witness were so shoddy that a verdict of acquittal should have been entered. *See Lyda v. United States,* 321 F.2d 788 (9th Cir. 1963). In our opinion, however, Berry's testimony was corroborated by documentary and physical evidence, the force of which was more than adequate to connect both defendants to the conspiracy.

█ It is also urged that evidence relative to the witness protection program was so prejudicial that a reversal is required. In opening, the United States Attorney said: "We will have testimony from one of the co-conspirators, an individual who was not indicted, but a co-conspirator, nevertheless, by the name of Walter Berry." In opening, the attorney for Castleberry said: "As I pointed out, the Government has in effect given Mr. Berry immunity regarding federal prosecution. I think the evidence will also show that he has been given some form of compensation in return for his cooperation separate and apart from the normal witness fees. He has been given assistance in relocating and finding a new job, perhaps even assistance in locating a job."

Berry was called as the Government's first witness, and on direct examination his testimony was as follows:

Q  Are you currently under the Federal Witness Protection in court here with the people who are assigned to you?

A  Yes, I am.

Q  Tell us why you are testifying in this matter?

A  I have several reasons. Do you— okay.

Well, I felt I didn't have much option. I had an agreement to work with these guys and when we got busted they deserted me. I heard rumors. A friend of mine got picked up and four guys in a limousine with machine guns looking for me.

MR. O'TOOLE: I object as to the relevancy and I ask for some more foundation on this.

THE COURT: I'll sustain the objection. Counsel will proceed by question and answer.

Q  BY MR ABLE: Did you have any particular fears of the individuals involved?

A  Yes, yes I did and also the fact that I was told they would bail me out of jail,

---

* Honorable Russell E. Smith, Senior United States District Judge, District of Montana, sitting by designation.

1. Pub.L.No. 91–452, 18 U.S.C.A. preceding § 3481.

retain counsel, pay me, none of that was done, and I promised—my dad died that week. I promised him I would go straight.

The next day counsel for Castleberry moved for a mistrial. The motion was denied.

Counsel for Castleberry, on the cross-examination of Berry, developed that, after Berry had agreed to cooperate with the Government and before he went into the program, the Government furnished him money to move, paid his bills until he moved into his own place, and then paid him $700.00 per month until the month of the trial. Counsel for Gilpen, on cross-examination of Berry, proved that he had gone into the protection program and that the threats had nothing to do with the prosecution of Castleberry and Gilpen but rather came from a coconspirator named Pettit, who was separately tried.

At the request of the defendants, the court instructed the jury as follows:

> The witness, Walter E. Berry, has testified that he received threats following his arrest in San Diego. There is no evidence before you, however, to indicate that the Defendants Castleberry and Gilpen personally made any threats directly or indirectly against the person of Walter E. Berry.

In view of the defendant Castleberry's opening and the inquiries of both defendants into the relationship between the Government and Berry involving as it did promises of immunity and payments of money, it was relevant for the Government to prove that the payments were made because Berry was being protected and that that protection was offered because Berry did have a fear generated by his cooperation with the prosecution. Once the matter of the protection program is broached, there is always some danger that the jury will infer without further evidence that the defendants themselves were the sources of the fear. Where, as here, however, there was evidence that Pettit, not the defendants, was the source of fear, and the jury was instructed that the defendants were not directly or indirectly responsible, the danger was minimal. In any event, the defendants deliberately took the risk. When Castleberry's counsel moved for discovery of the amounts paid under the witness protection program, he was advised by the court that, if the matter was opened, the Government would have a right to prove the witnesses' fears. It is now argued that Castleberry's counsel did not in opening refer to the witness protection program by name, nor mention Berry's fears; but once counsel opened the gate of special privileges the reason for those privileges became relevant, no matter how carefully the words suggesting the special benefits were chosen.

That the threats surfaced in the direct examination rather than on redirect is, in our opinion, under the circumstances of this case, no more than a problem in the order of proof and, while perhaps unfortunate, not error of a magnitude requiring reversal. *See United States v. Partin,* 552 F.2d 621 (5th Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977); *United States v. Librach,* 536 F.2d 1228 (8th Cir.), *cert. denied,* 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976).

Affirmed.

POOLE, Circuit Judge, concurring specially:

In concurring with the court's opinion, I feel it necessary to emphasize disapproval of the tactics employed by the prosecution in this case. The Government introduced what it had to know would be highly prejudicial testimony concerning threats against the witness Berry. The prejudicial outfall from this particular kind of testimony may linger despite any cautionary instructions, the suspicion having been implanted in the jurors' minds of connection between the defendants and their threatening coconspirators. The argument that this testimony was relevant to rehabilitate Berry is belied by the fact that it was elicited on direct examination, before the defense had had an opportunity to impeach him.

The Government no less than the court is duty-bound to seek and to serve justice. That obligation is ill-served in resorting to tactics of the sort portrayed here.

I have nonetheless joined the majority opinion because the evidence supporting conviction was substantial and the trial judge, with full knowledge of the posture of the case, gave instructions about the threats which on review I cannot conclude failed to repair the damage.