985 F.2d 575
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fausto Enrique DIAZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Adalberto Jose RESTREPO-GONZALEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lazaro Rico PINZON, Defendant-Appellant.
 Nos. 91-10095, 91-10096 and 91-10100.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 11, 1992.
Decided Feb. 2, 1993.
As Amended Sept.2, 1993.
 
 Appeal from United States District Court for the District of Arizona; Nos. CR-89-368-01-PHX, CR-89-368-5-PHX-R and CR-89-00368-RCB.
 D.Ariz.
 AFFIRMED.
 Before FLETCHER, POOLE and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This case arises from an undercover investigation of a Colombian cocaine smuggling operation which led to the indictment and conviction of Defendants Fausto Enrique Diaz, Lazaro Rico-Pinzon and Adalberto Jose Restrepo-Gonzalez (referred to collectively as "Defendants") for conspiracy to import and distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 963, 846. Three other individuals were indicted as well[1], but only the Defendants were apprehended. Defendants appeal their convictions and sentences on the basis of eight alleged trial court errors. We affirm.
 
 1. Admission of Evidence
 
 3
 A trial court's decision to admit evidence is reviewed for an abuse of discretion. United States v. Spillone, 879 F.2d 514, 527 (9th Cir.1989), cert. denied, 111 S.Ct. 210 (1990). District court errors are subject to the harmless error rule. United States v. Gillespie, 852 F.2d 475, 478 (9th Cir.1988).
 
 A. Explanation of Tapes
 
 4
 Admission of informant Fraley's testimony explaining the meaning of unclear or codified phrases in the taped conversations did not violate FED.R.EVID. 701 because Fraley's testimony was rationally based on his perception and helpful to an understanding of his testimony or to the determination of a fact in issue. See United States v. Cox, 633 F.2d 871, 875 (9th Cir.1980), cert. denied, 454 U.S. 844 (1981). There was no other evidence the jurors could call upon to interpret the codified language other than Fraley's, and the interpretation was based on his direct perception of the events and his extensive experience with the codified language.
 
 B. Testimony Regarding Violence
 
 5
 Any potentially prejudicial inferences resulting from Fraley's references to his fear of violence from certain non-party individuals were rendered harmless by the curative instructions given by the court.
 
 
 6
 We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an "overwhelming probability" that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be "devastating" to the defendant.
 
 
 7
 Greer v. Miller, 483 U.S. 756, 766 n. 8 (1987) (citations omitted). Improperly admitted evidence that a witness was in fear of a third party, not a defendant, is not so prejudicial as to render ineffective a curative instruction. United States v. Castleberry, 642 F.2d 1151, 1153 (9th Cir.), cert. denied, 452 U.S. 966 (1981).
 
 C. References to the Medellin Cartel
 
 8
 Fraley's references to the Medellin cartel and the "highest boss" did not violate FED.R.EVID. 402 or 403 for three reasons.
 
 
 9
 First, testimony regarding the Medellin cartel is relevant and non-prejudicial to the extent a defendant's actions could be "related to specific cartel members." United States v. Echavarria-Olarte, 904 F.2d 1391, 1397-98 (9th Cir.1990). Fraley's references did relate to specific cartel members: Fraley knew his smuggling involved the Medellin cartel because he was personally introduced to cartel leaders in 1988, in Bogota; he had personal knowledge that Don Pedro was directly below the highest level of the cartel; and, it was established that the Defendants worked for Don Pedro.
 
 
 10
 Second, the Government asserts (and the Defendants do not contest) that most of the references to the cartel were elicited by defense counsel during cross-examination.
 
 
 11
 And, finally, Fraley's explanation that the terms the "doctor" and his "offices" actually referred to leaders of the cartel was relevant to aid the jury in understanding the content of the tapes.
 
 D. Evidence of Prior Criminal Acts
 
 12
 Admission of Fraley's testimony about prior smuggling activities did not violate FED.R.EVID. 404(b).
 
 
 13
 "Rule 404(b) prohibits the government from introducing evidence of a defendant's prior crimes to show that the defendant has a bad character and therefore is likely to have committed the crime with which he is charged." United States v. McKoy, 771 F.2d 1207, 1213 (9th Cir.1985). The admission of any relevant evidence of other crimes is permissible under Rule 404(b) except where the evidence proves only the defendant's criminal disposition. Id.
 
 
 14
 Diaz has no legitimate basis to object to the testimony since none of Fraley's testimony concerning past smuggling operations implicated Diaz, and the court gave proper limiting instructions.
 
 
 15
 Fraley's testimony regarding the prior crimes of Restrepo and Rico-Pinzon was properly admitted under Rule 404(b) because it was offered to show more than Restrepo and Rico-Pinzon's criminal disposition. The testimony was offered to explain how Fraley knew some of the Defendants, how he was so easily able to become involved in another cocaine operation, how the coded terms in the taped conversations came to be used, the common scheme and association among the indicted conspirators and, (in response to the entrapment instruction requested by Defendants Restrepo and Rico-Pinzon) the predisposition of some of the Defendants. See United States v. O'Connor, 737 F.2d 814, 819 (9th Cir.1984) (evidence of an aborted Colombian narcotics transaction admissible under Rule 404(b) as explanatory background of Government's undercover operation), cert. denied, 469 U.S. 1218 (1985).
 
 E. Harmless Error
 
 16
 Finally, we conclude that the overwhelming evidence against the Defendants in recorded conversations and post-arrest statements renders any allegedly improper evidence harmless under FED.R.CRIM.P. 52(a). United States v. Crowley, 720 F.2d 1037, 1045 (9th Cir.1983), cert. denied, 465 U.S. 1029 (1984); Echavarria-Olarte, 904 F.2d at 1399.
 
 
 17
 2. Government's Agreement with Witness Benoit
 
 
 18
 The trial court did not abuse its discretion in denying the Defendants' motion for a mistrial based on a cooperation agreement between the USCS and witness Joseph Benoit.
 
 
 19
 Even if the government improperly denied Defendants access to a witness, there is no reversible error unless, in light of the whole record, the Defendants had been "unfairly handicapped." United States v. Cook, 608 F.2d 1175, 1182 (9th Cir.1979) (en banc), cert. denied, 444 U.S. 1034 (1980). Defendants were not unfairly handicapped by the alleged denial of pretrial access to Benoit because defense counsel made no attempt to interview the witness, failed to request the court to intervene, and had the opportunity to cross-examine the witness at length. See Id.
 
 3. Prosecutorial Misconduct
 A. Prosecutor's Comments
 
 20
 We review de novo the question of whether an impermissible rebuttal argument violates the Fifth Amendment. United States v. Gray, 876 F.2d 1411, 1416 (9th Cir.1989), cert. denied, 495 U.S. 930 (1990).
 
 
 21
 "A prosecutorial statement is impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify.' " Gray, 876 F.2d at 1416 (citation omitted). "A comment on the failure of the defense as opposed to the defendant to counter or explain the testimony presented or evidence introduced is not an infringement of the defendant's Fifth Amendment privilege." United States v. Castillo, 866 F.2d 1071, 1083 (9th Cir.1988) (citations omitted).
 
 
 22
 The prosecutor's statements were permissible under Castillo because they were a comment on Diaz's counsel's failure to explain how Diaz got to Phoenix. Therefore, Diaz's Fifth Amendment rights were not violated by the prosecutor's statements.
 
 B. Testimony of Witness Bailey
 
 23
 Diaz's Fifth Amendment rights were not violated by the testimony of a witness because such testimony does not constitute a state action. Diaz is probably arguing that the prosecutor's act of soliciting Bailey's comment was a state action in violation of Diaz's Fifth Amendment rights. Even framed in this way, the claim is meritless. Bailey was referring to defendants in general, not Diaz in particular. Therefore this Defendant's silence was not implicated.
 
 
 24
 4. Denial of Defendants' Motion to Submit Written Interrogatories to Jurors
 
 
 25
 Under Ariz.Dist.Ct.R. 12(b) and FED.R.CRIM.P. 33, the trial court lacked jurisdiction to grant Defendants' Motion to Submit Written Interrogatories to Jurors.
 
 
 26
 Local Rule 12(b) requires motions to submit written interrogatories to trial jurors to be made within the time granted for a motion for a new trial. FED.R.CRIM.P. 33 requires motions for new trials be made within seven days unless based on "newly discovered evidence," in which case the motion may be made within two years.
 
 
 27
 In the present case, the motion was untimely because (1) it was filed over two months after the jury verdict, and (2) did not constitute "newly discovered evidence" inasmuch as Diaz's counsel was aware of it the day of the verdict.
 
 5. Sentencing Guidelines
 A. Non-Commercial Aircraft Provision
 
 28
 We review de novo the trial court's interpretation of the Sentencing Guidelines. United States v. Pemberton, 904 F.2d 515, 516 (9th Cir.1990).
 
 
 29
 i. Ambiguity
 
 
 30
 We reject Defendants' argument that the Guidelines' provision (section 2D1.1(b)(2)) for an offense level increase where a defendant is convicted of drug trafficking "under circumstances in which an aircraft other than a regularly scheduled commercial air carrier was used to import the controlled substance" is ambiguous and, therefore, should be resolved in favor of the accused. Defendants contend the phrase "was used" could imply a narrow interpretation of personal use, knowledge of the use, or procurement of the aircraft being used, rather than the broad interpretation of any use applied by the trial court (which Defendants call a "strict liability" interpretation). Diaz and Rico-Pinzon argue that under a narrower interpretation, the provision does not apply to them because they were not involved in the importation of the cocaine, only the distribution, and had no decision-making authority in the use of the airplanes. Because neither had personally used, procured nor approved the use of the planes, they argue that they did not "use" the planes personally and should not be subject to the Guideline provision.
 
 
 31
 We reject the argument. The provision is not ambiguous because the Guidelines reflect the drafters' intent that section 2D1.1(b)(2) be broadly construed. See U.S.S.G. § 1B1.3(a)(1) (providing guidance for interpretation of offense conduct under chapter 2). Under section 1B1.3(a)(1), a defendant is accountable for acts committed by others during the course of an offense if he committed the crime at issue in concert with the others and the act in which the others engaged was reasonably foreseeable. See id. and n. 1.
 
 
 32
 In the present case, even if Diaz and Restrepo did not actually participate in the decision to use the non-commercial airplane, it was reasonably foreseeable to them that a decision-making codefendant would authorize such use. They both knew that use of aircraft was being planned because Diaz obtained detailed information about the plane at the Phoenix meeting, and took the information with him when he returned to Miami to meet with Rico-Pinzon. Therefore, Diaz and Rico-Pinzon are accountable for their codefendants' foreseeable decision to use a non-commercial airplane--an offense under section 2D1.1(b)(2), as interpreted by section 1B1.3(a)(1).
 
 
 33
 We conclude that by virtue of the relevant conduct provision, section 2D1.1(b)(2) applies to Diaz and Rico-Pinzon regardless of their individual responsibilities.
 
 
 34
 ii. Violation of 21 U.S.C. § 960(a)
 
 
 35
 Defendants claim the trial court erred in applying U.S.S.G. § 2D1.1(b)(2) because they were not convicted of violating 21 U.S.C. § 960(a), as required by that Guideline provision. We disagree.
 
 
 36
 Defendants were convicted of conspiring to violate 21 U.S.C. § 952 (importation of controlled substances), in violation of 21 U.S.C. § 963. Section 963 (the conspiracy statute) provides for the same penalties as the offense crime[2], in this case section 952. The penalty for violation of section 952 is provided in 21 U.S.C. § 960(a).[3] Thus, since section 960(a) incorporates by reference the crime for which the Defendants were convicted, the Guidelines Section 2D1.1(b)(2) requirement that there be a conviction under section 960(a) was met.
 
 B. Acceptance of Responsibility
 
 37
 U.S.S.G. § 3E1.1 "instructs the district court to reduce a defendant's offense level by two points if it finds that he 'clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct.' " United States v. Cooper, 912 F.2d 344, 345 (9th Cir.1990).
 
 
 38
 Defendant Restrepo cites no instance when he accepted responsibility for the crimes he committed. In his brief, he continues to claim his innocence (i.e., that he thought he was importing marijuana, not cocaine), which demonstrates that, in fact, he does not accept responsibility. Further, Restrepo's personal statement attached to the presentence report did not address his conduct in the time frame covered by the indictment.
 
 C. Downward Departure
 
 39
 An appellate court does not have jurisdiction to review a district court's discretionary decision not to depart downward from the Guidelines. United States v. Morales, 898 F.2d 99, 103 (9th Cir.1990). Appellate review of downward departure is only appropriate when the district court based its decision on a legal conclusion that departure was unauthorized. United States v. Mena, 925 F.2d 354, 355 (9th Cir.1991).[4]
 
 
 40
 The trial court's decision was discretionary as demonstrated by its lengthy statement that the decision was based on the seriousness and magnitude of the crime. Moreover, contrary to Restrepo's present allegation, in that statement the court did discuss, and dismiss, allegations of outrageous governmental conduct.
 
 8. Outrageous Government Conduct
 
 41
 Defendants challenge the trial court's denial of their motion to dismiss the indictments based on outrageous government conduct. Defendants assert the government's actions in "manufacturing" the crime and committing illegal smuggling acts constitute outrageous government conduct and advance two theories to justify dismissal: (1) the government conduct violated the Due Process clause, and (2) the government conduct justifies the exercise of the inherent supervisory power of the federal courts.
 
 
 42
 The question of whether the government's conduct violated the Defendants' rights to due process is one of law, reviewable by this court de novo. United States v. Bogart, 783 F.2d 1428, 1431 (9th Cir.1986), vacated on other grounds, United States v. Wingender, 790 F.2d 802 (9th Cir.1986). The district court's decision not to exercise its supervisory power is reviewed for abuse of discretion. United States v. Ramirez, 710 F.2d 535, 541 (9th Cir.1983).
 
 A. Due Process
 
 43
 Under certain circumstances, the conduct of law enforcement officers may be so outrageous as to open a door to a claim that the defendant was denied his constitutional right to due process. United States v. Simpson (Simpson I), 813 F.2d 1462 (9th Cir.), cert. denied, 484 U.S. 898 (1987); United States v. Luttrell, 889 F.2d 806, 811 (9th Cir.1989), vacated in part on other grounds and amended, 923 F.2d 764 (1991) (en banc), cert. denied, 112 S.Ct. 1558 (1992). The outrageous conduct doctrine is similar to the entrapment defense, except that it may be applied even where the defendant was predisposed to commit the crime. United States v. Citro, 842 F.2d 1149, 1153 (9th Cir.), cert. denied, 488 U.S. 866 (1988). However, we will not find the conduct of government agents investigating criminal activity constitutionally unacceptable unless it is "so grossly shocking and so outrageous as to violate the universal sense of justice." Ramirez, 710 F.2d at 539 (quoting United States v. Ryan, 548 F.2d 782, 789 (9th Cir.1976), cert. denied, 430 U.S. 965 (1977)); see also Luttrell, 889 F.2d at 811. This is a very high standard to overcome.
 
 
 44
 In fact, we regard government investigatory conduct sufficiently "outrageous" to be considered a violation of the due process clause only under two general circumstances: (1) where the police behavior has been brutal, which means that they have physically or psychologically coerced the defendant; or (2) where the government's agents "engineer and direct the criminal enterprise from start to finish." Bogart, 783 F.2d at 1435-36. In this case, only the second circumstance need be considered.
 
 
 45
 We will find the government's involvement in a criminal enterprise permissible when:
 
 
 46
 (1) the defendant was already involved in a continuing series of similar crimes, or the charged criminal enterprise was already in progress at the time the government agent became involved; (2) the agent's participation was not necessary to enable the defendants to continue the criminal activity; (3) the agent used artifice and stratagem to ferret out criminal activity; (4) the agent infiltrated a criminal organization; and (5) the agent approached persons already contemplating or engaged in criminal activity.
 
 
 47
 United States v. Bonanno, 852 F.2d 434, 437 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989).
 
 
 48
 All of the Bonanno factors are present in this case. Fraley's prior experience with the Don Pedro organization and the organization's ability to procure and distribute significant quantities of cocaine indicate that the organization's members were involved in criminal activity before the behavior of the government agents in this case occurred. The organization's prior success in smuggling the drug to the United States indicates that government participation was not essential to the success of their enterprise, and in any event, the government facilitated only the movement of the cocaine from Belize to New York. The Don Pedro organization engaged in manufacturing of the drug in South America, shipped the cocaine to Belize, and established a distribution system on the east coast of this country. Fraley's success in rejoining his former colleagues soon after undertaking his role as an undercover agent indicates that he used "artifice and stratagem" to ferret out the organization's criminal activity, and his prior dealings with the organization, as well as the incriminating statements of the Defendants, easily convince us that he infiltrated an ongoing criminal enterprise. The ease with which Fraley established the operation at issue here also convinces us that he approached individuals already contemplating or engaged in criminal activity. The crimes were not "fabricated entirely by the police in order to secure the defendant's conviction rather than to protect the public from the defendant's continuing criminal behavior." Bogart, 783 F.2d at 1438 (emphasis original); see also United States v. Winslow, 962 F.2d 845, 849 (9th Cir.1992). We would have to stretch our imaginations to conclude that Don Pedro and his associates were not engaged in ongoing criminal activity at the time Fraley resumed his association with them. The government did not "go[ ] beyond the state and endanger[ ] the audience." Luttrell, 889 F.2d at 812. Its conduct was not so outrageous as to shock the conscience, and we therefore believe that the district court correctly denied the motion to dismiss the indictments.
 
 B. Supervisory Power
 
 49
 Defendants also contend that the district court improperly failed to exercise its supervisory power as a basis for the dismissal of the indictments. They assert that at least the district court should have conducted an evidentiary hearing on the government misconduct issue, and invite us to invoke the supervisory power to dismiss the indictments. We reject the Defendants' arguments and decline to use our supervisory authority.
 
 
 50
 We may, subject to certain limitations, formulate and exercise procedural rules " 'not specifically required by the Constitution or the Congress.' " Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988) (quoting United States v. Hasting, 461 U.S. 499, 505 (1983)). However we rarely exercise our supervisory power, and we do so only to (1) implement a remedy for the violation of a recognized statutory or constitutional right; (2) preserve "judicial integrity" by ensuring that a conviction rests on appropriate considerations validly before a jury; or (3) deter future illegal conduct. United States v. Simpson, 927 F.2d 1088, 1090 (9th Cir.1991) (Simpson II ) (citing Hasting 461 U.S. at 505). We need not address the second basis for invocation of the supervisory power, and we can rely on the first and third reasons for its exercise only if the government has acted illegally. Id. at 1090-91. Defendants argue the government engaged in illegal conduct because the pilots hired by the government to fly the cocaine from Belize did not register to distribute the drugs, as required by 21 U.S.C. § 822.[5] In this case, the pilots of the drug-running aircraft operated under the supervision and control of federal agents at all times. Thus, while they were involved in distributing cocaine, they complied with the mandate of section 822.
 
 
 51
 We do not hold that the pilots' behavior would be legal under all circumstances. For example, illegal activity might be found if the government's operations violated an agreement between Belize and the United States. But cf. United States v. Alvarez-Machain, 112 S.Ct. 2188 (1992) (reversing use of supervisory power to dismiss indictment where government agents kidnapped foreign citizen from foreign country because extradition treaty held not violated).
 
 
 52
 The separation of powers places significant limits on the supervisory authority of federal judges, United States v. Jennings, 960 F.2d 1488, 1491 (9th Cir.1992), and we exercise that authority only where there is "a clear basis in law and fact for doing so." Ramirez, 710 F.2d at 541. Both of these principles preclude exercise of the supervisory power because the executive branch has not acted illegally in this case. We also do not believe that the Defendants have alleged behavior sufficiently close to the line of illegality to require an evidentiary hearing on the supervisory power issue.
 
 
 53
 This court has noted that consideration of separation-of-powers principles imposes significant limitations on a court's use of supervisory powers. United States v. Gatto, 763 F.2d 1040, 1046 (9th Cir.1985). Historically the supervisory power has been infrequently utilized, "and a dismissal should be granted only when there is a clear basis in fact and law for doing so." Ramirez, 710 F.2d at 541. We conclude the present case presents no basis whatsoever to invoke a federal court's supervisory power.[6]
 
 
 54
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The other indicted individuals are: Pedro Libardo Ortegon (aka "Don Pedro"), Armando Grajales and Wences Velasco Peterson
 
 
 [2]
 21 U.S.C. 963 provides, "Any person who attempts or conspires to commit any offense defined in this title shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."
 
 
 [3]
 21 U.S.C. § 960(a) provides: "Any person who--(1) contrary to ... [21 USCS § 952] ... knowingly or intentionally imports or exports a controlled substance, ... shall be punished as provided in subsection (b)."
 
 
 [4]
 We also review under a clearly erroneous standard factual finding that the district court believed prevented it from departing downward or exercising discretion. See United States v. Roe, 976 F.2d 1216, 1218 and fn. 1 (9th Cir.1992)
 
 
 [5]
 21 U.S.C. § 822 requires "[e]very person who manufactures, distributes, or dispenses any controlled substance" to register with the Attorney General
 
 
 [6]
 Defendants also allege the government's Brady violations constituted outrageous conduct. We decline to address this issue because Defendants' allegations are not sufficiently clear for us to do so