# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,     )
                              )
       v.                    )     ID No. 1210013321
                              )              1210013272
OTIS PHILLIPS           )
                              )
     and            )
                              )
JEFFREY PHILLIPS,     )
                              )
     Defendants.     )

September 3, 2015

# SUPPLEMENTAL OPINION

John Downs, Esquire, Ipek Medford, Esquire, and Periann Doko, Esquire, Deputy Attorney Generals, Delaware Department of Justice, Wilmington, Delaware. Attorneys for the State of Delaware.

Anthony A. Figliola, Esquire, 1813 Marsh Road, Ste A, Wilmington, Delaware 19801. Michael C. Heyden, Esquire, 1201 King Street, Wilmington, Delaware 19801. Attorneys for Defendant Otis Phillips.

Kevin J. O'Connell, Esquire, Raymond D. Armstrong, Esquire, and Misty A. Seemans, Esquire, Assistant Public Defenders, Public Defender's Office, Wilmington, Delaware. Attorneys for Defendant Jeffrey Phillips.

**SCOTT, J.**

## INTRODUCTION

Before the Court are the Defendants Otis Phillips and Jeffrey Phillips' (collectively the "Defendants") Motion to Sever and Motions for Mistrial. The Defendants jointly filed a Motion to Sever and Motion for Mistrial ("Mistrial I")[1] in response to a statement made by a State's witness at trial, regarding the witness's participation in witness protection. In an email on October 26, 2014, the Court denied both of the Defendants' motions. At sidebar on October 27, 2014, the Court denied the Defendants' second Motion for Mistrial ("Mistrial II"),[2] which was made in response to the same State's witness's testimony regarding statements made by a co-conspirator. Below is the Court's supplemental opinion on these issues. For the reasons set forth below, the Defendants' Motion to Sever and Motions for Mistrial I and II were **DENIED**.

## FACTUAL BACKGROUND

The Defendants were 2 of 16 co-defendants in this case, which included a charge of Gang Participation against each defendant. The Defendants were tried together and the remaining defendants entered plea agreements with the State before or after the Defendants' trial. Kelmar Allen ("Allen") was a co-defendant

---

[1] This opinion addresses only the Defendants' first and second motions for mistrial made throughout the guilt phase of trial. Mistrial I, and a motion to sever, were moved for by the Defendants at trial on October 24, 2014. The parties subsequently filed supplemental briefs in response to both issues before the Court ruled.

[2] Mistrial II was moved for at trial by the Defendants on October 27, 2014. The Defendants filed supplemental briefs after the Court's ruling.

who testified as a State's witness against the Defendants at trial on October 24 and 27, 2014, pursuant to a plea agreement that he entered with the State prior to trial.

### *Motion to Sever and Mistrial I*

On October 21, 2014, the State indicated to defense counsels that four of its witnesses had entered witness protection.[3] Defense counsels requested from the State the witness protection agreements for those witnesses and calculations of the financial benefits received by each witness from the program. After further discussion between the parties on the issue, the Court directed the State not to elicit testimony from these witnesses regarding witness protection on direct examination and to instruct them to testify regarding witness protection only if specifically questioned about it on cross examination. As an additional protective measure, the Court crafted a curative limiting instruction to be read to the jury should either defendant elect to question any of those of witness about their participation in witness protection. There was no objection by any of the parties to the Court's proposed limiting instruction.[4]

---

[3] Maria DuBois ("DuBois"), Michael Young ("Young"), and Allen were the testifying co-defendants in this matter who entered plea agreements with the State prior to this trial, each of which included witness protection. There was one other co-defendant who entered a plea agreement with the State prior to this trial that included witness protection, but he did not testify at trial.

[4] *See* Oct. 22, 2014 Trial Transcript at 5-6.

3

The Defendants elected not to raise the issue of witness protection during the testimony of DuBois or Young, nor did the State elicit any such testimony.[5] However, witness protection was mentioned during Allen's testimony on direct examination during the following exchange:

> **State**: Now, without again looking at the document, what, if any, benefits did the State promise you in exchange for your plea?
>
> **Allen**: Just the, just the, like, witness protection.[6]

The prosecutor immediately requested a sidebar, where she informed the Court that she

> instructed this witness multiple times that [she] was not allowed to ask about witness protection, and we went over the plea, and that's all he was going to say. And that if the defense asked, then he had to tell the truth about witness protection. So I don't know why he mentioned that.[7]

Defense counsel for Jeffrey[8] requested the Court cure the violation by a limiting instruction to the jury, with proposed language such as, the witness is not in witness protection because of any fear of Jeffrey Phillips or no threats have been made by Jeffrey Phillips.[9] Defense counsel for Otis moved for a mistrial on the grounds that the mention of witness protection was damaging to Otis' case, such

---

[5] *See* Oct. 21-23, 2014 Trial Transcripts.
[6] Oct. 24, 2014 Trial Transcript at 95-96.
[7] *Id.* at 96.
[8] The Court will hereinafter address the Defendants by first name only for purposes of clarity, as the Defendants have the same last name.
[9] *See* Oct. 24, 2014 Trial Transcript at 96.

4

that it could not be otherwise remedied.[10] The Court denied Otis' request for a mistrial. The parties then agreed that the Court would read the proposed limiting instruction, which was read to the jury as follows:

> Ladies and gentlemen, the witness has testified that he is currently has some involvement in the Witness Protection Program. There's no evidence before you that the defendants personally made any threats, directly or indirectly, against the witness. The fact that a witness received a benefit in the program may only be considered by you as for the purpose of judging the credibility of the witness, it shall not be considered by you in determining the guilt of the defendants.[11]

After the instruction was read, the Court dismissed the jury so that the parties could voir dire Allen for more information regarding his statement.

Prior to questioning Allen, defense counsel for Jeffrey joined Otis' request for a mistrial, arguing that the Court had previously informed the State that, if it chose to question its witnesses regarding witness protection, it did so at its own peril.[12] Defense counsel asserted that the Court's statement meant the State was specifically aware of the possible consequences of eliciting such a response on direct examination. The Court denied Jeffrey's request for a mistrial, on the basis that the State's question was broad enough that it did not specifically elicit the witness's response, and the limiting instruction prepared in advance on the issue that was read to the jury.[13]

---

[10] *Id.*
[11] *Id.* at 98-99.
[12] *Id.* at 99.
[13] *Id.*

The parties then proceeded to voir dire Allen as to his motivation to participate in witness protection, whether either of the Defendants had threatened him, and whether the State had instructed him as to what circumstances he was permitted to discuss witness protection during his testimony. When asked by Jeffrey's defense counsel whether the State had instructed him not to talk about witness protection, Allen testified that the State did not give him such an instruction. Otis' defense counsel questioned Allen regarding his motivation for participating in witness protection and whether Otis Phillips had ever threatened him. The State then questioned Allen as to whether the State had discussed witness protection with him and Allen's understanding of whether he was allowed to talk about witness protection prior to him testifying. When asked about each, Allen responded "yes," that the prosecutor explained to him prior to his testimony that the she would not ask him about witness protection, that defense counsel may ask him about witness protection, and that if defense counsel did the State would then be able to question him about witness protection. However, when asked about his understanding of this process prior to testifying, Allen testified that he did not understand the instruction.

After the conclusion of Allen's voir dire, the Court heard oral argument from the parties as to the issues of mistrial and severance, and then recessed for the remainder of the day for the parties to brief the issues. Defense counsel for Otis

argued that a mistrial was necessary as a result of Allen's statement regarding his participation in witness protection because any mention that Allen is in the witness protection program was evidence that Otis is a threat to Allen and may harm him, and that it shows Otis has dangerous propensities and is a violent individual. Both the Defendants argued that Allen's mention of witness protection was prejudicial to them and could not be sufficiently remedied by the curative instruction given by the Court. The State argued that the Court's limiting instruction that immediately followed Allen's statement cured any potential prejudice to the Defendants, such that a mistrial was not necessary.

Defense counsel for Otis' position on the presentation of evidence of financial remuneration is that such evidence shows that Otis is a very dangerous individual if the State is willing to pay thousands of dollars to insure that Allen would testify against him, which is extremely detrimental to Otis Phillips. Defense counsel for Jeffrey's position on the presentation of this evidence is that the financial remuneration received by Allen demonstrates that the he is receiving a financial benefit in return for his testimony.

Defense counsel for Otis argued that this issue created antagonistic defenses between the Defendants because the difference in the Defendants' defense strategies on this issue was such that the jury could not accept one argument without rejecting the other. Similarly, defense counsel for Jeffrey argued that if he

were prohibited from introducing evidence of the financial benefit Allen received through witness protection on the grounds that it would cause prejudice to Otis, then Jeffrey would suffer substantial prejudice from the denial of his right to introduce exculpatory evidence that would be available to him if he were tried alone. Both defense counsels argued that this creation of antagonistic defenses by this is required severance of the defendants. The State argued that the Defendants' opposing approaches on cross examination regarding the witness protection issue do not constitute antagonistic defenses under Delaware law to warrant severance.

On October 26, 2014, the Court ruled via email to the parties denying the Defendants' Motion to Sever and Mistrial I, briefly citing case law for each motion and stating that it would supplement its ruling with a more formal opinion.[14]

### Motion for Mistrial II

On October 27, 2014, Allen's testimony resumed. During Allen's testimony, defense counsel for both the Defendants made numerous objections to statements made by Allen on the basis that such testimony was inadmissible hearsay. In this opinion, the Court discusses only those statements which were the basis for objections that the Court overruled and which the Defendants challenge in their supplemental briefs.[15]

---

[14] *See* Oct. 26, 2014 Email from Court to the parties.

[15] For purposes of this opinion, the Court will discuss these objections as Hearsay Objection I, Hearsay Objection II and Hearsay Objection III.

8

## 1. Hearsay Objection I

The following exchange was made during the State's direct examination of Allen:

Q: Tell us what happened when Pluck and Lavar showed up at the house.

A: Well, when they showed up, they was -- they was talking to one another and talking to Fats and Moe, because I was on the porch, like, right here on the porch. Fats and Moe was down here.

Q: And what's Pluck doing? Where is Pluck?

A: Pluck -- Pluck and Lavar is, like, right here.

Q: What are you doing while they're standing out there on Lamotte Street?

A: They just talking. And Pluck is on the phone with someone. Pluck was on the phone.[16]

On the basis of hearsay, defense counsel for Jeffrey preemptively objected to Allen's possible response.[17]

At sidebar, the State explained that Allen was testifying as to hearing Pluck talking to his brother, Otis Phillips, on the phone outside the Lamotte Street house. The State communicated that Allen would testify that Pluck was asking Otis where he was so that Pluck could pick them up, because Otis was saying that he was hiding under a car and that Jeffrey had been shot. The State also communicated that Allen would testify that he knew the conversation that Pluck was having was

---

[16] Oct. 27, 2014 Trial Transcript at 75.
[17] Id.

9

with Otis because Pluck kept referring to the person on the phone as "O" and "Dog." The State argued that this testimony was admissible as an exception to hearsay because Allen was testifying as to statements made in the furtherance of the conspiracy between Pluck and Otis Phillips, in an effort to aid Otis and Jeffrey in their flight from Eden Park on July 8, 2012.

Both defense counsels argued that those statements were inadmissible hearsay within hearsay because Allen was not a party to the conversation in which he is part of furthering a conspiracy, and that the conversation itself was not in furtherance of the conspiracy. They also argued that Allen did not have any personal knowledge of the person on the other end of the phone conversation with Pluck. The Court limited Allen's testimony to only what he personally heard Pluck[18] say, nothing else.

## 2. Hearsay Objection II

The following exchanged was made during defense counsel for Jeffrey's cross examination of Allen:

> **Q**: Right. So, when they're on the corner, you didn't know anything about the Eden Park shooting?
>
> **A**: No. I just know he's talking to someone, his brother, telling him about –
>
> ....

---

[18] Pluck is an alias of Seon Phillips. Seon was a co-defendant in this case, and was alleged by the State to have been the leader of the Sure Shots gang.

**A**: Yeah, he was talking to his brother on the phone. I know it was his brother because he -- he say his name and everything.

**Q**: Okay.

**A**: And -- and he was saying that he's under a car, hiding. And he was, "Like, you good?"

**Q**: Objection, your Honor. This is -- can we go to sidebar.[19]

Defense counsel for Jeffrey argued that Allen's statement was inadmissible hearsay and speculative because Allen was testifying as to what the person on the other end of the phone communicated to Pluck. The State reiterated its argument that Allen was merely testifying as to what he heard Pluck saying, not speculating. The Court overruled the objection, on the basis that Allen was testifying as to what he heard Pluck saying to him and the others outside the Lamotte Street house. The Court allowed Allen to finish his answer to the question, which was

> Yeah, he was talking to his brother. And his brother was explaining what's going on at the scene, like, really explaining it. He said Badadan got shot in his leg and he's hiding under a car. And Pluck told the brother to leave, like, "I can pick you up right now," and he was like, "Man, I'm not" -- "I'm not leaving Badadan."

Pursuant to another hearsay objection in response to this statement, the Court instructed that line of questioning stop, as it was becoming unclear whether Allen was testifying about what he heard Pluck say or what the person on the phone was telling Pluck.

---

[19] Oct. 27, 2014 Trial Transcript at 254, 255-56.

### 3. Hearsay Objection III

The following exchanged was made during the State's re-direct examination of Allen:

> **Q**: What else did you hear Pluck say while he's on the phone with Dog, or defendant Otis Phillips?
>
> **A**: He -- that's what I heard him say. I heard him say that, if you're good and where Badadan at and he will come there -- he will come to -- "Tell me where your location at" and he will come there and he will get you.
>
> **Q**: When you say he will come there and get you, who is "he"?
>
> **A**: Pluck saying to his brother that he will come and pick him up from where he at.
>
> **Q**: Did Pluck tell you or Lavar or Fats anything else while he's on that curb right there?
>
> **A**: Yeah. He said Badadan got shot.[20]

Defense counsel for Jeffrey objected to Allen's last response as inadmissible hearsay. Again, the State reiterated its position from Hearsay Objections I and II that Allen was testifying as to statements made by Pluck, which were admissible as statements by a co-conspirator in the furtherance of a conspiracy. The Court overruled defense counsels' objection to Allen's last statement.

Also at sidebar, defense counsels requested any mention of the Defendants being under a car that Allen made be stricken, as there was no testimony that Allen

---

[20] *Id.* at 266-67.

heard Pluck say that. Therefore, such testimony was inadmissible hearsay. The Court agreed and struck such testimony in the following instruction:

> Ladies and gentlemen, please disregard any comments this witness may have made about hearing about anyone that may have been under any car.[21]

The Court ruled from the bench on all hearsay objections made on October 27, 2014, regarding Allen's testimony. Defense counsels for both Otis and Jeffrey subsequently filed supplemental briefs on this hearsay issue.

## DISCUSSION

## I.    A NEW TRIAL IS NOT REQUIRED.

### 1. Kelmar Allen's statement regarding witness protection is not sufficient grounds for a mistrial.

There is no Delaware case law on the narrow issue presented in this case, and little from other jurisdictions. However, the available case law does not support a sanction of mistrial as a result of the improper introduction of testimony regarding a witness's participation in the witness protection program, *per se.*[22] Accordingly, the Court finds that a statement by a witness at trial regarding his participation in witness protection, by itself, is not sufficient to warrant a new trial. Furthermore, the circumstances surrounding the improper testimony of Allen's

---

[21] *Id.* at 274.

[22] *See United States v. Vastola,* 899 F.2d 211, 235 (3rd Cir. 1990); *United States v. Caliendo,* 910 F.2d 429 (7th Cir. 1990); *United States v. Nahoom,* 791 F.2d 841 (11th Cir. 1986); *United States v. Panas,* 738 F.2d 278 (8th Cir. 1984); *United States v. Castleberry,* 642 F.2d 1151 (9th Cir. 1981); *State v. Leisure,* 810 S.W.2d 560 (Mo. Ct. App. 1991); *New Jersey v. Conway v. Grecco,* 472 A.2d 588 (N.J. Super. App. Div. 1984).

13

participation in witness protection in this case do not sufficiently prejudice the Defendants to warrant a mistrial.

As many courts have held, a witness's participation in a witness protection program is a matter that must be handled delicately so that the jury does not consider evidence of such participation as proof of the defendant's alleged propensities.[23] The prosecution may elicit the fact that a witness is involved in the witness protection program and has received substantial benefit, so long as the prosecution does not exploit any inference of threat from the defendant.[24] In evaluating the potential prejudicial impact of such testimony, the court should consider whether the testimony specifically inculpates the defendant as a source of threats to the witness.[25] However, the potential for prejudice is slight where the testimony only vaguely suggests that the witness was placed in the program because of threats from the defendant.[26]

During the course of the trial in *United States v. Nahoom*, the trial court granted a motion *in limine* requiring the prosecution to instruct its witnesses not to refer to the fact that any potential government witness might be involved in the witness protection program.[27] The government, on cross examination of the defendant, asked if he was aware that his co-conspirator was place in the witness

---

[23] *See Leisure*, 810 S.W.2d at 573; *Vastola*, 899 F.2d at 235.
[24] *See Vastola*, 899 F.2d at 236.
[25] *Id.*
[26] *Id.*
[27] 791 F.2d at 845.

protection program by the government. The *Nahoom* Court affirmed the trial judge's conclusion that the statement did not sufficiently prejudice the defendant such that a mistrial was warranted.[28]

In *United States v. Panas*, the court held that the district court did not abuse its discretion in denying the defendant's motion for mistrial because the U.S. Attorney brought out on direct examination that the government informant was a participant in the witness protection program.[29] Similarly, in *United States v. Caliendo*, the court held that references made that certain witnesses were participating in the witness protection program – two during the government's examination of its own witness and one during cross examination – did not cause prejudice to the defendant to such an extent as to mandate a reversal.[30]

Finally, the court in *New Jersey v. Conway v. Grecco* stated that there was no harm derived from stating that the witness was a participant in the witness protection program.[31] The court stated that the witness could not state the reasons why he was admitted to the program, but the program was correctly noted as one of the benefits the witness was getting when the terms of the plea bargain were outlined.[32]

---

[28] *Id.* at 846.
[29] 738 F.2d at 285.
[30] 910 F.2d at 436.
[31] 472 A.2d at 607.
[32] *Id.*

In this case, although the State had been advised that they could introduce the issue of witness protection at their own peril, the facts do not warrant a sanction of mistrial. The State's question to Allen about the benefits he received under his plea agreement was broad and did not elicit Allen's specific and immediate response as to witness protection. Moreover, Allen merely stated that his participation in witness protection was a benefit that he received under his plea agreement with the State. Allen did not testify in front of the jury that his participation in witness protection was in any way a result of threats to him made by either defendant. Finally, a previously prepared and approved limiting instruction was immediately given to the jury, which clarified that Allen's statement regarding witness protection did not suggest that the Defendants have threatened the witness or are in any way related to the reason the witness is in witness protection. Accordingly, the Court finds that Allen's improper mention of his participation in witness protection did not sufficiently prejudice either of the Defendants to warrant a mistrial.

**2. Kelmar Allen's testimony regarding statements made by co-conspirators on July 8, 2012 is not sufficient grounds for a mistrial.**

Seon Phillips, a.k.a. Pluck, was a non-testifying co-defendant in this case. At trial on October 27, 2014, Allen testified as to statements he heard from Pluck outside of the Lamotte Street house while on the phone with Otis Phillips after the Eden Park shooting on July 8, 2012. In addition to the Pluck's phone conversation,

16

Pluck was also relaying that information to Allen and other Sure Shot gang members who were outside at the house.

Defense counsel for the Defendants objected to Allen's testimony regarding these statements on the basis that they are inadmissible hearsay. Defense counsels argue first that Pluck's statements were not made in furtherance of a conspiracy to qualify as a hearsay exception under D.R.E. 801(d)(2)(E). They also argue that, regardless of whether Pluck's statements qualify as a hearsay exception, the statements are still inadmissible as they violate the Defendants' Sixth Amendment rights under the Confrontation Clause. The Court disagrees.

First, Allen's testimony as to Pluck's statements is admissible because the statements are an exception to hearsay under D.R.E. 801(d)(2)(E) as statements by a co-conspirator and were made in the furtherance of a conspiracy. "Generally, a conspiracy terminates upon accomplishment of the principal objective unless evidence is introduced indicating that the scope of the original agreement included acts taken to conceal the criminal activity."[33] However, this Court has stated that "statements made after the robbery but before the proceeds were divided are made 'in furtherance of the conspiracy.'"[34] Similarly, in this case, Pluck's statements

---

[33] *Reyes v. State,* 819 A.2d 305, 312 (Del. 2003).
[34] *Jones v. State,* 940 A.2d 1, 20 (Del. 2007) (quoting *Hackett v. State,* 1999 WL 624108, *3 (Del. Super. Jul. 16, 1999)).

were made in an effort to aid the Defendants in their flight from the Eden Park shooting.

Moreover, there is evidence that the original agreement included aiding the Defendants' flight after the shooting because Sure Shot Sheldon Ogle was sent with the Defendants to act as their getaway driver. However, during their flight from Eden Park Sheldon Ogle was fatally shot and crashed the getaway vehicle shortly after exiting the park, causing the Defendants to abandon the vehicle and flee on foot. The fact that the Defendants' originally agreed upon plan of flight was frustrated does not negate the fact that aiding such flight was impliedly part of the original agreement.

Allen testified that Pluck was asking the person on the phone "where are you?" and "I will come pick you up." Allen also testified that he believed the person Pluck was talking to on the phone was Otis because Pluck repeatedly referred to that person as "O" and "Dog," names by which he knew Otis Phillips. Based on these facts, the Court finds that the conspiracy was ongoing when Pluck's statements were made because the conversation was for the purpose of finding the person or persons on the phone and picking them up. Thus, Pluck's statements were made in the furtherance of the conspiracy, and admissible under

D.R.E. 801(d)(2)(E). Moreover, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice.[35]

Second, the statements do not violate the Defendants' Sixth Amendment right to Confrontation. The Sixth Amendment of the U.S. Constitution requires that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."[36] In *Crawford v. Washington*[37] the U.S. Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."[38] The U.S. Supreme Court held in *Davis v. Washington*[39] that statements are "testimonial when the circumstances objectively indicate that there is no ... ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."[40]

The Defendants argue that their right to confrontation was violated because they could not confront Pluck and cross-examine him about the statements he allegedly made to Allen and the other Sure Shots outside of the Lamotte Street house. They also argue that the admission of a non-testifying co-defendant's

---

[35] D.R.E. 403; *see Jones*, 940 A.2d at 11.
[36] U.S. Const. Amend. VI.
[37] 541 U.S. 36 (2004).
[38] *Id.* at 53-54.
[39] 126 S.Ct. 2266 (2006).
[40] *Id.* at 2273-74.

19

statements that are not entirely self-inculpating and tend to incriminate the Defendants violates the Confrontation Clause. However, the court in *Floudiotis v. State*[41] recognized that "Confrontation Clause issues ... may not be applicable" when a statement of a co-conspirator is admitted under D.R.E. 801(d)(2)(E).[42]

Although *Crawford* "[left] for another day any effort to spell out a comprehensive definition of 'testimonial,'"[43] *Davis* provides guidance on the distinction between testimonial and nontestimonial statements:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no ... ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.[44]

Thus, under *Crawford* and *Davis,* a statement is testimonial and implicates the Confrontation Clause where it is given in non-emergency circumstances and the declarant would recognize that his statements could be used against him in

---

[41] 726 A.2d 1196 (Del. 1999). *See also Barrow v. State,* 749 A.2d 1230, 1242-48 (Del. 2000).

[42] *Floudiotis,* 726 A.2d at 1212; *Jones,* 940 A.2d at 12.

[43] *Crawford,* 541 U.S. at 68. *See id.* ("Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.").

[44] *Davis,* 126 S.Ct. at 2273-74. In making this statement, the U.S. Supreme Court acknowledged that "[t]his is not to imply ... that statements made in the absence of any interrogation are necessarily nontestimonial." *Id.* at 2274 n. 1.

subsequent formal proceedings.[45] By contrast, "a casual remark to an acquaintance" is a nontestimonial statement.[46] Similarly, as the U.S. Supreme Court recognized in *Crawford,* statements made in furtherance of a conspiracy are nontestimonial.[47] Here, Pluck's statements were nontestimonial in nature because, as the Court has already found, they were made in the furtherance of the conspiracy.

The Court finds no merit in the Defendants' argument because Plucks' statements in furtherance of the conspiracy were not "testimonial" within the

---

[45] *See id.* ("[E]ven when interrogation exists, it is in the final analysis the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate."). *Cf. id.* at 2274 n. 2 ("[O]ur holding today makes it unnecessary to consider whether or when statements made to someone other than law enforcement personnel are 'testimonial.'"). *See Crawford,* 541 U.S. at 51 ("On the other hand, *ex parte* examinations might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them.").

[46] *See Crawford,* 541 U.S. at 51 ("An accuser who makes a formal statement to government officers bears testimony in the sense that a person who makes a casual remark to an acquaintance does not.").

[47] *See id.* at 56 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial-for example, business records or statements in furtherance of a conspiracy."). *Cf. id.* ("[A]ccomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule.") (quoting *Lilly v. Virginia,* 527 U.S. 116 (1999)). *See generally id.* at 59 n. 9 ("The [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").
As the *Jones* court noted, some courts after *Crawford* have found that statements made under the "state of mind" exception are not "testimonial" for purposes of confrontation. *Jones,* 940 A.2d at 13 n.45. *See Horton v. Allen,* 370 F.3d 75, 84 (1st Cir. 2004) (holding that a statement from a conversation, admitted under the state-of-mind exception to the hearsay rule, was nontestimonial because it was private, not made under examination, not contained in a formalized document such as an affidavit, deposition or prior testimony transcript, and not made "under circumstances in which an objective person would reasonably believe that the statement would be available for use at a later trial") (internal quotation marks omitted); *State v. Johnson,* 2005 WL 1952939 (Del. Super. Jul. 19, 2005) (analyzing statements under D.R.E. 803(3) to determine whether "a reasonable person in the position of the declarant would think that his or her statement likely was to be used in the course of investigating and prosecuting a criminal act," which may implicate *Crawford* ). In this case, the *Crawford* threshold is not reached because none of Pluck's statements are testimonial.

meaning of *Crawford* and *Davis*.[48] Consistent with these cases, Pluck's nontestimonial statements to Allen and the other Sure Shots outside the Lamotte Street house are subject only to Delaware's hearsay rules because they do not implicate the Confrontation Clause.[49] The Court has already concluded that the statements were properly admitted under our Rules of Evidence. Accordingly, the Defendants' arguments are without merit and the admission of Pluck's statements through Allen's testimony does not require a mistrial.

## II. SEVERANCE OF THE DEFENDANTS IS NOT APPROPRIATE.

Under Superior Court Criminal Rule 8(b),[50] two or more defendants may be charged in the same indictment, if they are alleged to have participated in the same act, or in the same series of acts. Ordinarily, when defendants are indicted jointly, they are also tried together.[51] If, however, the trial court finds that the joinder of defendants for trial will prejudice any of the parties, it may grant a motion for separate trials.[52]

---

[48] *See Jones*, 940 A.2d at 12-13.

[49] *See Crawford*, 541 U.S. at 68.

[50] Superior Court Criminal Rule 8(b) provides:
> *Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

[51] *Jenkins v. State*, 230 A.2d 262, 272 (Del. 1967).

[52] Superior Court Criminal Rule 14, providing:
> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trial of counts, grant a severance of

22

The decision to grant or deny a motion for severance is addressed to the sound discretion of the trial judge.[53] At the trial level, the defendant's burden to establish a need for severance is high because a separate trial will only be ordered upon "a strong showing of prejudice."[54] "[P]rejudice means more than just a better chance of acquittal at a separate trial."[55] Incidental prejudice, such as that which is almost always encountered when multiple defendants are tried together, will not suffice.[56]

As a general rule, the factors to be considered when determining whether a motion for a separate trial should be granted are: problems involving a co-defendant's extra-judicial statements; an absence of substantial independent competent evidence of the movant's guilt; antagonistic defenses as between the co-defendant and the movant; and difficulty in segregating the State's evidence as between the co-defendant and the movant.[57]

When the basis for a defendant's motion is antagonistic defenses, the defendant is entitled to severance when "the jury can reasonably accept the core of

---

defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney to deliver to the court for inspection in camera any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.
*See Bradley*, 559 A.2d 1234.

[53] *Stevenson v. State*, 709 A.2d 618, 628 (Del. 1998); *Bradley v. State*, 559 A.2d 1234, 1241 (Del. 1989).

[54] *United States v. Martinez*, 922 F.2d 914, 922 (1st Cir. 1991) (The Court of Appeals affirming the district court's denial of both defendants' mid-trial motion for severance.) (citations omitted).

[55] *United States v. Martinez*, 479 F.2d 824, 828 (1st Cir. 1987).

[56] *Martinez*, 922 F.2d at 922; *see United States v. Cresta*, 825 F.2d 538, 554-55 (1st Cir. 1987).

[57] *Stevenson*, 709 A.2d at 629; *Robertson v. State*, 630 A.2d 1084, 1093 (Del. 1993).

the defense offered by either defendant only if it rejects the core of the defense offered by his codefendant ....”[58] However, “the presence of hostility between a defendant and his co-defendant or ‘mere inconsistencies in defenses or trial strategies,’” does not require severance *per se.*[59] In *Stevenson*, the Court held that the trial court did not err in finding that the defendants failed to offer evidence of antagonistic defenses because “[t]he record reflects that neither [defendant] testified, and neither presented evidence that directly implicated the other in their own defenses.”[60] Moreover, the Court agreed with the trial court’s conclusion that it seemed apparent that each defendant merely believed that his chances of acquittal would be enhanced by severance.[61]

The Court finds this case sufficiently similar to the facts in *Stevenson*. In this case, both the Defendants argue that one defendant’s decision to cross-examine the State’s witnesses regarding their participation in witness protection would prejudice the other defendant, whose trial strategy was to not address

---

[58] *Bradley*, 559 A.2d at 1241.

[59] *Stevenson*, 709 A.2d at 628 (quoting *Outten v. State*, 650 A.2d 1291, 1298 (Del. 1994) (citations omitted)).

[60] *Stevenson*, 709 A.2d at 629.

[61] *Stevenson*, 709 A.2d at 629 (citing *State v. Manley*, 1996 WL 527322 (Del. Super. Aug. 1, 1996)

> Here, both defendants appear to argue that mutually antagonistic defenses are present in this case because the evidence indicates that only one of them committed the lethal act....[N]either defendant has proffered to this Court what the core of his defense is. In the final analysis, all that the defendants are offering to this Court is the hypothesis that mutually antagonistic defenses exist, without any evidence to suggest that they exist in fact. What seems apparent is the belief of each defendant that his chances for acquittal would be enhanced by severance. That rationale was insufficient even prior to *Zafiro v. United States*.)

witness protection. However, neither of the Defendants positions present separate defenses as to a State's witness's participation in witness protection, or otherwise, that the jury could only reasonably accept the core of if it rejects the core of the defense offered by his co-defendant. Moreover, neither of the Defendants testified or presented evidence that directly implicated the other in their own defense.

Accordingly, the Court finds that the Defendants did not present antagonistic defenses, under Delaware law, to warrant severance of the trial.

## CONCLUSION

For the reasons set forth above, the Defendants' Motion to Sever and Motions for Mistrial I and II were **DENIED**.

**IT IS SO ORDERED.**

_____
Judge Calvin L. Scott, Jr.

25